UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| IN RE: DARVOCET, DARVON AND | ) | |
| PROPOXYPHENE PRODUCTS | ) | Master File No. 2: 11-md-2226-DCR |
| LIABILITY LITIGATION | ) | MDL Docket No. 2226 |
| | ) | |
| *Smith, et al., v. Mylan Pharm., Inc., et al.,* | ) | Civil Action No. 2: 11-183-DCR |
| *Buch, et al., v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 11-324-DCR |
| *Zickefoose, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-347-DCR |
| *Shackelford, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-357-DCR |
| *Nicholson, et al., v. Eli Lilly & Co., et al.,* | ) | Civil Action No. 2: 11-358-DCR |
| *Hines v. Eli Lilly and Company, et al.,* | ) | Civil Action No. 2: 11-396-DCR |
| *Ooten v. Eli Lilly & Company, et al.,* | ) | Civil Action No. 2: 11-397-DCR |
| *Adegbayi v. Xanodyne Pharm., et al.,* | ) | Civil Action No. 2: 12-013-DCR |
| *Marsalis v. Eli Lilly & Company, et al.,* | ) | Civil Action No. 2: 12-032-DCR |
| *High, et al., v. Eli Lilly and Co., et al.,* | ) | Civil Action No. 2: 12-041-DCR |
| *Ayling, et al., v. Eli Lilly and Co., et al.,* | ) | Civil Action No. 2: 12-043-DCR |
| *Lopez, et al., v. Eli Lilly and Co., et al.,* | ) | Civil Action No. 2: 12-046-DCR |
| *Wilson v. Eli Lilly and Company, et al.,* | ) | Civil Action No. 2: 12-047-DCR |
| *Sinkler v. Eli Lilly & Company, et al.,* | ) | Civil Action No. 2: 12-049-DCR |

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT
ELI LILLY AND COMPANY'S THIRD MASTER MOTION FOR
JUDGMENT ON THE PLEADINGS IN TWELVE CASES**

\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*

Through a series of opinions, this Court has dismissed claims asserted against several

defendants in this multi-district litigation.  On July 26, 2012, Defendant Eli Lilly and Company

("Lilly") filed its Third Master Motion for Judgment on the Pleadings in fourteen cases.  [MDL

Record No. 2047]  Lilly contends that the claims asserted against it by residents of New Jersey,

North Carolina, Arizona, Nebraska, South Carolina, West Virginia, Florida, and New Hampshire

are deficient and should be dismissed for reasons outlined in the Court's earlier opinions.[1] Having reviewed the relevant complaints as well as authorities cited by the parties, the Court agrees with Lilly's arguments in twelve of the fourteen cases.  Accordingly, the relief sought will be granted, in part.

## I.

On March 5, 2012, the Court dismissed claims asserted in a number of cases against Defendant Xanodyne Pharmaceuticals, Inc. ("Xanodyne").  [MDL Record No. 1274]  The basic thrust of Xanodyne's original argument was that it could not be held liable to plaintiffs who failed to allege that they ingested a product that it sold, manufactured, or distributed.  [*Id.*, p. 2] After summarizing the history of the approval process for Darvon and Darvocet and after addressing the standard applicable to motions filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court explained that "[i]n every state implicated by Xanodyne's motions, it is well-settled law that a 'threshold requirement of any products-liability claim is that the plaintiff assert that the defendant's product caused the plaintiff's injury.'"  [*Id.*, p. 5 (quoting *Smith v. Wyeth*, 657 F.3d 420, 423 (6th Cir. 2011))]

> Therefore, in the context of product liability claims, a plaintiff must state sufficient allegations to allow at least the reasonable inference that the product that caused the injury was made, sold, or distributed by the defendant in question. . . . Xanodyne is entitled to a dismissal of product liability claims asserted by plaintiffs who have either alleged the ingestion of another company's product or

---

[1]     Lilly brings this motion with respect to all claims asserted against it in the above-captioned matters except for those asserted by four plaintiffs in *Buch, et al., v. Xanodyne Pharmaceuticals, Inc., et al.*, Civil Action No. 2: 11-324-DCR: Eva McCrary, Farahnaz Poozeshi, Candice Shannon, and Beverly Smith. Additionally, this motion does not apply to *Buch* Plaintiffs Mary Bookout, Deborah Leslie, Edna McCoy, Christina Norman, Pinnie Pounds, or Rose Ann Scott, as their claims were dismissed on August 2, 2012.  [*See* MDL Record Nos. 2059 and 2073.]

who have simply alleged that they do not know which defendant sold or manufactured the product ingested.

[*Id.*, pp. 5-6 (internal citation omitted)]

The plaintiffs' allegations that they: (i) ingested a generic form of Darvon and/or Darvocet; (ii) ingested Darvon, Darvocet, and/or generic propoxyphene that *might have been* sold by Xanodyne; or (iii) ingested Darvon or Darvocet but could not determine who manufactured, marketed, distributed, and/or tested the product, were found to be deficient. In reaching this conclusion, the Court analyzed the products liability law from a number of states, including Tennessee, South Carolina, Georgia, Indiana, Louisiana, Minnesota, Mississippi, New Jersey, New York, Ohio, Oklahoma, Pennsylvania, and Texas. [*See id.*, p. 5 n.2.][2]

The plaintiffs were unable to defeat Xanodyne's original motion by citation to materials outside the complaints. As the Court explained,

information that was not alleged in the complaints will not be considered for purposes of the motions to dismiss. *See Maiden v. N. Am. Stainless*, 183 F. App'x 485, 487 (6th Cir. 2005) (noting that courts are not required to consider matters outside the pleadings in a motion to dismiss). The plaintiffs cannot use their discovery responses to effectively amend their complaints without leave of Court. If the product identification information was not in the complaint itself, the product liability claims against Xanodyne cannot survive the motion to dismiss.

[*Id.*, p. 8]

The March 5, 2012, Memorandum Opinion and Order also addressed the misrepresentation claims asserted against Xanodyne and held that they should be dismissed as

_____

[2]      In a later opinion, the Court analyzed products liability law from a number of other states, including Arizona, Maine, Nebraska, North Carolina, Virginia, Washington, and West Virginia. The Court reached an identical conclusion regarding the viability of the plaintiffs' claims arising from those jurisdictions. [*See* MDL Record Nos. 1546, 1791.]   And on May 1, 2012, the Court granted Lilly's motion for judgment on the pleadings regarding certain Maryland plaintiffs.  [MDL Record No. 1771]

well.  [*Id.*, pp. 9-10]  Finally, the Court concluded that, with respect to jurisdictions implicated by Xanodyne's initial motion, the defendant had no duty toward consumers of generic products containing propoxyphene.  [*Id.*, pp. 10-14]  After discussing the California and Vermont authorities cited by the plaintiffs, the Court noted that "[f]ifty-five decisions from twenty-two states have rejected [similar] arguments."  [*Id.*, p. 12]  Thus, "in the absence of any binding authority that would dictate the application of the rule proffered by the plaintiffs, . . . Xanodyne cannot be held liable to plaintiffs who consumed other manufacturers' drugs."[3]  [*Id.*, p. 14]

The Court addressed Lilly's initial motion to dismiss and motion for judgment on the pleadings in a decision issued on March 7, 2012.  [MDL Record No. 1402]  Like Xanodyne, Lilly asserted that the plaintiffs' complaints in a number of cases did not allege facts sufficient to support a reasonable inference that the plaintiffs ingested a product that it sold or manufactured.  It likewise contended that the plaintiffs could not supply missing or otherwise necessary information through discovery responses.  Although the Court rejected the contention that Lilly could not be held liable for ingestion of products it manufactured prior to divesting the NDA for Darvon and Darvocet in 2002, dismissal was granted on other grounds in a number of cases.  The Court held that it was insufficient to allege that the product a particular plaintiff claimed to have ingested *might* have been sold by Lilly.  Additionally, the Court specifically rejected the plaintiffs' argument that Lilly could be liable as a company that manufactured

---

3      The March 5, 2012 Memorandum Opinion and Order also addressed the plaintiffs' request to amend their complaints to avoid dismissal.  In denying this request, the Court noted that, as a general matter, plaintiffs are not entitled to an advisory opinion identifying deficiencies in their pleadings, followed by an opportunity to cure those deficiencies. Further, under *Ashcroft v. Iqbal*, plaintiffs are not permitted to conduct discovery for the purpose of fixing factually deficient complaints.  [*See id.*, pp. 15-16 (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1954 (2009); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011)).]

propoxyphene products for other entities pursuant to 1994 supply agreements with Mylan and/or Mylan Pharmaceuticals, Inc. or a 2002 NDA-transfer agreement with NeoSan Pharmaceuticals Inc. [*Id.*, pp. 10-16]  In rejecting arguments that the plaintiffs' allegations created a reasonable inference that at least some of the generic propoxyphene products ingested by the plaintiffs both before and after the February 2002 divestiture had been manufactured by Lilly, the Court concluded that such allegations were insufficient to survive Lilly's motion to dismiss.  [*Id.*, pp. 11-13]  While this claim did not assert more than a "sheer possibility" of liability and thus was insufficient under *Iqbal*, the Court also noted that none of the subject complaints actually alleged the ingestion of a Mylan product.  [*Id.*]

The Court reached a similar conclusion regarding allegations that Lilly manufactured a portion of the brand-name propoxyphene products ingested after the 2002 divestiture.  Again, accepting the plaintiffs' allegations as true, at most, they establish a "mere possibility that the medicine used could have been made by [Lilly], rather than by any number of other manufacturers."  [*Id.*, pp. 13-14 (citations omitted)][4]  Further, state law failure-to-warn claims against Lilly were preempted by federal law because Lilly had no power to change the labels for generic drugs or brand-name drugs that were made and sold by others.  [*Id.*, p. 15 (citing *Pliva v. Mensing*, 131 S. Ct. 2567 (2011))]

---

[4]      At page 15 of the March 7, 2012 Memorandum Opinion and Order addressing Lilly's motion, the Court explained that, even if the subject complaints had sufficiently alleged that the plaintiffs ingested a drug manufactured by Lilly, the claims against Lilly as a manufacturer would likely fail.  The plaintiffs had not stated a manufacturing defect claim against Lilly because, the Court found, their "allegations [did] not assert that Lilly, at any time, manufactured products that were adulterated, outside of specifications, or used defective ingredients."  [MDL Record No. 1402, p. 15]

Additionally, the Court specifically rejected the plaintiffs' assertions that they should be allowed to proceed on their misrepresentation claims against Lilly.  Although it found the plaintiffs had sufficiently pleaded the claims under Rule 9(b) of the Federal Rules of Civil Procedure, the Court again reiterated that Lilly could not be held liable to a plaintiff who consumed another manufacturer's drug.  [*Id.*, p. 18]  The Court also rejected the plaintiffs' arguments that they should be permitted leave to amend their complaints.  The Court determined that dismissal with prejudice was proper, especially where many of the plaintiffs had been given leave to amend their complaints previously.  [*Id.*, p. 19]

Finally, on July 31, 2012, the Court addressed allegations regarding Lilly's alleged liability as a generic manufacturer of propoxyphene products for Mylan and/or Mylan Pharmaceuticals, Inc. ("Mylan") in two specific cases: *Chavez v. Eli Lilly and Company, et al.*, Civil Action No. 2: 12-062-DCR, and *Marston v. Eli Lilly and Company, et al.,* Civil Action No. 2: 12-066-DCR.  [MDL Record No. 2054]  In both cases, the plaintiffs had filed amended complaints alleging the ingestion of products manufactured by a Mylan defendant; however, the complaints were stricken because the plaintiffs failed to comply with prior orders regarding claims against generic manufacturers.  Notwithstanding that fact, the Court proceeded to review the facts asserted in the amended complaints.  As outlined in the Court's Memorandum Opinion and Order, Chavez alleged that he ingested a Mylan product from March 1998 to May 2002.  Marston alleged that she ingested Propoxyphene-100 APAP 650, a portion of which was manufactured by Mylan.  Thus, they asserted claims against Lilly in its capacity as a manufacturer of generic propoxyphene products for Mylan.

This Court determined that the allegations in *Chavez* and *Marston* were sufficient to create a reasonable inference that the plaintiffs had ingested propoxyphene manufactured by Lilly. This was because both plaintiffs alleged ingestion of a product sold by Mylan at a time during which it was reasonable to infer that Lilly was engaged in manufacturing generic propoxyphene for that company. The plaintiffs' claims in those cases were nevertheless dismissed on preemption grounds, pursuant to the rationale outlined in the Court's earlier opinion regarding failure-to-warn claims asserted against generic manufacturers under *Mensing*, 131 S. Ct. 2567.

> In *Mensing*, the Supreme Court held that state-law failure-to-warn claims against generic drug manufacturers are preempted by federal law. Because the Food, Drug and Cosmetic Act (FDCA) requires that generic drug labels match those of the corresponding brand-name products and that any labeling change to satisfy state law would conflict with this "federal duty of sameness," the Court concluded that generic drug manufacturers could not simultaneously comply with both state and federal law. [131 S. Ct.] at 2575 (internal quotation marks omitted); *see id.* at 2578. The FDA also requires that generic drugs be identical to their brand-name counterparts "in active ingredients, safety, and efficacy." *Id.* at 2574 n.1. Therefore, this Court rejected the contention that "wrongful marketing" claims — including design defect, negligent design, negligence, and breach of warranty — should escape preemption, because they are "all based on the allegedly defective design of the drug, which the Generic Defendants . . . were powerless to change." [MDL Record No. 1305, p. 7] Finally, the Court dismissed claims of misrepresentation, fraud, statutory negligence, and breach of express warranty brought against the generic defendants, again on preemption grounds. [*Id.*, pp. 11-13]

[MDL Record No. 2054, pp. 5-6]

In *Marston*, the plaintiff claimed ingestion of a propoxyphene product beginning in 2004, after Lilly had divested its NDA for Darvon and Darvocet. Thus, the Court dismissed the claims against Lilly in that case because they were preempted under *Mensing*. However, in *Chavez*, the

plaintiff alleged ingestion of a generic propoxyphene product that was allegedly manufactured by Lilly for Mylan during the time that Lilly held the NDA for the drug. The Court held that, under this factual scenario, *Mensing* did not compel dismissal of the plaintiff's failure-to-warn claim as a matter of federal conflict preemption.[5]  [*Id.*, pp. 6-7]  But the allegations in *Chavez* were "too attenuated to allow the Court to draw the reasonable inference that Lilly was liable for the misconduct alleged."  [*Id.*, p. 7]  In *Chavez*, the plaintiff sought to hold Lilly liable as a generic manufacturer based on the powers it held as a brand-name company. This theory of liability was determined to be insufficient to state a claim against Lilly. The Court declined to "find that Lilly owed the plaintiffs a duty to change the label as a brand-name defendant and that its failure to do so rendered it liable as a generic manufacturer."  [*Id.*, p. 9]

## II.

Lilly's present motion concerns plaintiffs who are residents of Arizona, North Carolina, South Carolina, Nebraska, New Jersey, West Virginia, Florida, and New Hampshire. With the exception of Florida and New Hampshire, the Court has already determined that similar claims against Lilly should be dismissed where the relevant complaints do not sufficiently allege ingestion of a product that Lilly manufactured, marketed, sold, or distributed. The present cases

---

5       As the Court explained,

in *Wyeth v. Levine*, 555 U.S. 555 (2009), . . . the Supreme Court held that similar claims asserted against a brand manufacturer were not preempted because "the manufacturer bears responsibility for the contents of its label at all times." *Id.* at 570-71. As a general rule, then, it is possible for brand-name manufacturers to comply with both federal and state requirements, and therefore conflict preemption does not shield them from liability for failure to warn.

[MDL Record No. 2054, pp. 6-7]

include the following allegations which are summarized at pages 3 to 7 of Lilly's supporting

memorandum:

- **Plaintiff Norma Lanning** (Case No. 2: 11-183-DCR), a North Carolina resident, alleges that she was prescribed Darvocet and ingested its generic equivalent (propoxyphene) from 2009 to November 2010. Lanning does not allege that she ever ingested a Lilly product; instead, she contends that the products she ingested were manufactured under the name "Qualitest by Propst and/or Vintage."

- **Plaintiff Jimmy Blanton** (Case No. 2: 11-183-DCR), a South Carolina resident, alleges that he was prescribed Darvocet and ingested its generic equivalent. Blanton does not allege that he ever ingested a Lilly product; instead, he states that the products he ingested were manufactured by Teva.

- **Plaintiff Feride Buch** (Case No. 2: 11-324-DCR), a Florida resident, alleges that she took at least Prop-N/APAP 100–650 and that the National Drug Codes for at least some of the medication that she took were 00603-546632 and 00406177205. Buch alleges that at least some of the medication was made by Qualitest Pharmaceuticals Inc. and Mallinckrodt.

- **Plaintiff Lou Davis** (Case No. 2: 11-324-DCR), a Florida resident, alleges that he took at least propo-n/apap and that the National Drug Codes for some of the medication were 00093-0890-05 and 00603-5468-28. Davis alleges that at least some of the medication was manufactured by Mallinckrodt Pharmaceuticals Group and Qualitest Pharmaceuticals Inc.

- **Plaintiff Eddie McCoy** (Case No. 2: 11-324-DCR), a South Carolina resident, alleges that he took at least propoxyphene apap and that the prescription numbers for at least some of the medication were 04100322, 04100747, 0412191, 04104902, 04102191, 04112036, 04114184, 04116357, and 04117851.

- **Plaintiff James Morel** (Case No. 2: 11-324-DCR), a New Hampshire resident, alleges that he took propoxyphene apap and that the prescription number for at least some of the medication was 0443161.

- **Plaintiff Jonnie Nelson** (Case No. 2: 11-324-DCR), a South Carolina resident, alleges that he took at least propoxyphene apap and that the number for at least some of the medication was 00603546832.

- **Plaintiff Gary Zickefoose and spouse** (Case No. 2: 11-347-DCR). Plaintiff Zickefoose, a West Virginia resident, alleges that he was prescribed and ingested

propoxyphene and/or its generic equivalent.  He does not allege that he ever ingested a Lilly product and makes no allegation regarding the date(s) of ingestion or the manufacturer of the product he ingested.  Zickefoose asserts that he cannot determine the defendant or entity that manufactured, marketed, distributed, and/or tested the particular products that allegedly caused his injuries.[6]

- **Plaintiff Betty Shackelford and spouse** (Case No. 2: 11-357-DCR).  Plaintiff Shackelford, a West Virginia resident, alleges that she was prescribed and ingested propoxyphene and/or its generic equivalent.  Ms. Shackelford does not allege that she ever ingested a Lilly product and makes no allegations regarding the date(s) of her ingestion or the manufacturer of the product she ingested.  Shackelford further admits that she cannot determine the defendant or entity that manufactured, marketed, distributed, and/or tested the particular products that allegedly caused her injuries.

- **Plaintiff Steven Nicholson and spouse** (Case No. 2: 11-358-DCR).  Plaintiff Nicholson, a West Virginia resident, alleges that he was prescribed Darvocet and ingested propoxyphene or its generic equivalent.  Nicholson does not allege that he ever ingested a Lilly product and makes no allegations regarding the date(s) of his ingestion or the manufacturer of the product he ingested.  Nicholson further admits that he cannot determine the defendant or entity that manufactured, marketed, distributed, and/or tested the particular products that allegedly caused his injuries.

- **Plaintiff Gladys Hines** (Case No. 2: 11-396-DCR), a North Carolina resident, alleges that she was prescribed Darvocet and ingested its generic equivalent from approximately December 11, 2009, through December 31, 2009.  Hines does not allege that she ever ingested a Lilly product and does not identify any other defendant who manufactured the propoxyphene products she ingested.

- **Plaintiff Pamela Janet Ooten** (Case No. 2: 11-397-DCR), a West Virginia resident, alleges that she was prescribed Darvocet and ingested its generic equivalent from approximately April 1, 2002, through August 4, 2007.  Ooten does not allege that she ever ingested a Lilly product and does not identify any other defendant who manufactured the propoxyphene products she ingested.

---

6       Although the plaintiffs' counsel did not comply with the Order entered on May 4, 2012 [MDL Record No. 1792] requiring amendments to be filed within twenty-one days, upon review, the Court will grant Plaintiff Gary Zickefoose's motion to file an amended complaint, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure.  The proposed amendment alleges, in part, that Zickefoose ingested a product manufactured by Lilly "from 1987 until approximately 1995." [*See* MDL Record No. 2171-1 ¶ 8 (*Zickefoose* First Amended Complaint).]

- **Plaintiff Donna Adegbayi** (Case No. 2: 12-013-DCR) alleges that **Evelyn Givens**, a Nebraska resident, was prescribed Propoxyphene Products Propoxy-N 00603546732 and ingested a Qualitest product from at least February 2008 to 2010. Further, she alleges that Ms. Givens ingested an Endo Pharmaceuticals product and a Qualitest Pharmaceuticals generic equivalent during this same period. The plaintiff does not allege that Ms. Givens ever ingested a Lilly product but states that she does not have all of the pharmacy records to confirm whether Ms. Givens ingested Mylan products allegedly manufactured by Lilly.

- **Plaintiff Keith Marsalis** (Case No. 2: 12-032-DCR), an Arizona resident, alleges that he was prescribed Darvocet and ingested its generic equivalent (propoxyphene) from 2004 up to and including November 19, 2010. Marsalis does not allege that he ever ingested a Lilly product and does not identify who manufactured the propoxyphene products he ingested.

- **Plaintiff Lois High** (Case No. 2: 12-041-DCR) alleges that **Minnie Fowler**, a North Carolina resident, was prescribed Darvon/Darvocet. She does not allege that Ms. Fowler ever ingested a Lilly product and does not identify any other defendant who allegedly manufactured the propoxyphene products that Fowler ingested.

- **Plaintiff Steven Ayling** (Case No. 2: 12-043-DCR), a New Jersey resident, alleges that he was prescribed Darvocet and ingested its generic equivalent (propoxyphene). Ayling does not allege that he ever ingested a Lilly product and makes no allegations regarding the date(s) of his ingestion or the manufacturer of the products he ingested.

- **Plaintiff Mark Lopez and spouse** (Case No. 2: 12-046-DCR). Mr. Lopez, a New Jersey resident, alleges that he was prescribed Darvocet and ingested its generic equivalent (propoxyphene). Lopez does not allege that he ever ingested a Lilly product and makes no allegations regarding the date(s) of his ingestion or the manufacturer of the products he ingested.[7]

---

7       Although the plaintiffs' counsel did not comply with the Order entered on May 4, 2012 [MDL Record No. 1792] requiring amendments to be filed within twenty-one days, upon review, the Court will grant Plaintiff Mark Lopez's motion to file an amended complaint. The proposed amendment alleges, in part, that Lopez ingested a product manufactured by Lilly.  [*See* MDL Record No. 2143-1 ¶ 8 (*Lopez* First Amended Complaint).] While the discovery responses attached to the plaintiff's motion to amend do not necessarily support his assertion, the plaintiff alleges — and Lilly does not contest — that specific ingestion information regarding a Lilly product was provided to the defendant on March 14, 2012.

- **Plaintiff Constance Wilson** (Case No. 2: 12-047-DCR) alleges that **Thomas Wilson**, a New Jersey resident, was prescribed Darvocet and ingested its generic equivalent (propoxyphene).  The plaintiff does not allege that Mr. Wilson ever ingested a Lilly product and makes no allegations regarding the date(s) of his ingestion or the manufacturer of the products he ingested.[8]

- **Plaintiff Rose Marie Sinkler** (Case No. 2: 12-049-DCR), a South Carolina resident, alleges that she was prescribed Darvocet and ingested its generic equivalent (propoxyphene).  Sinkler does not allege that she ever ingested a Lilly product and makes no allegations regarding the date(s) of his ingestion or the manufacturer of the products she ingested.

[*See* MDL Record No. 2047-2, pp. 3-7.]

For the reasons outlined in earlier decisions, the Court concludes that the above allegations made by residents of Arizona, Nebraska, New Jersey, North Carolina, South Carolina, and West Virginia are insufficient to state a claim for relief against Lilly.  Further, because neither Florida nor New Hampshire recognizes products liability or misrepresentation claims under the facts alleged, the claims asserted by residents from those states also will be dismissed.  *See Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) (granting dismissal in action against manufacturer and seller of brand-name prescription drugs where it

---

8       In this action, the plaintiff alleges that her deceased husband ingested Mylan products from May 2000 to January 24, 2002.  [MDL Record No. 2145, p. 5]  Wilson asserts that, because Lilly was not prohibited from fulfilling the requirements of a 1994 propoxyphene supply agreement with Mylan when it entered into an agreement with NeoSan, it can be inferred that Lilly *might* have manufactured the Mylan product her spouse consumed prior to January 24, 2002.  [*Id.*]  However, as discussed above, the Court has previously rejected the plaintiffs' argument that Lilly may be liable for generic propoxyphene products sold by Mylan.  Even where, as here, the timing of the ingestion dates creates a reasonable inference that "some of the Mylan products ingested were manufactured by Lilly," [MDL Record No. 2054, p. 5], the claim fails because the Court will not expand liability so as to "hold a brand-name company responsible as a generic manufacturer based on the powers it held as a brand-name company."  [*Id.*, p. 7]  The plaintiffs argue that Lilly should be held liable "for its decision to continue manufacturing and selling propoxyphene products to Mylan . . . even after it knew or should have known the risks of the products."  [MDL Record No. 2145, p. 5] This argument is unavailing because the Court has previously dismissed similar "failure to withdraw" claims as preempted by *Mensing*.  [MDL Record No. 1305, p. 7 (concluding that such claims were based on "the allegedly defective design of the drug")]  Therefore, the claims in this action will be dismissed.

-12-

was uncontested that plaintiff did not ingest a product made by defendants; therefore, the defendants did not owe a duty of care to plaintiff as a matter of law); *Pulte Home Corp., Inc. v. Ply Gem Indus., Inc.*, 804 F. Supp. 1471, 1484-85 (M.D. Fla. 1992) ("It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law."); *Morton v. Abbott Labs.*, 538 F. Supp. 593, 595 (M.D. Fla. 1982) ("[The] Plaintiff in a product liability action must ordinarily prove that a manufacturer defendant produced the product that allegedly caused the injury."); *see also Univ. Sys. of N.H. v. U.S. Gypsum Co.*, 756 F. Supp. 640, 653 (D.N.H. 1991) (explaining that, under the traditional tort law causation requirement, "imposition of liability depends upon the plaintiff[] proving that the defendant manufacturer made the product that caused the plaintiff's injury"); *cf. MacCleery v. T.S.S. Retail Corp.*, 882 F. Supp. 13, 16 (D.N.H. 1994) (holding that manufacturer who was not involved in the design, manufacture, or distribution of the product that caused the plaintiff's injury "has not . . . engaged in any conduct for which, as a matter of law, it could be directly liable").

Nothing contained in the plaintiffs' consolidated response [MDL Record No. 2145] or in the supplemental response filed in opposition to Lilly's Third Master Motion [MDL Record No. 2147] compels a different result. The plaintiffs contend that Florida cases holding that a plaintiff must allege and prove that the defendant's product caused his or her injury are outdated. They argue that, after *Mensing*, Florida courts will be inclined to allow plaintiffs who ingested generic drugs to proceed against brand-name manufacturers under a theory of misrepresentation. [*Id.*, pp. 3-5 ("The court in *Levine* based its ruling on the assumption [that] the manufacturer of

the generic drug was responsible for the contents of its label.")]  However, it is not the position of this Court to announce a new rule of law.  Again, the Court reiterates that, in the absence of any binding authority expanding the liability of brand-name manufacturers, Lilly cannot be held liable to plaintiffs who consumed other manufacturers' drugs.

The plaintiffs also assert that *Williams v. O'Brien*, 669 A.2d 810 (N.H. 1995), shows "that New Hampshire courts would hold a defendant liable for providing incorrect information when the defendant knew the plaintiff would be relying on that information." [MDL Record No. 2147, p. 1] However, as Lilly points out in its reply, *Williams* is completely inapplicable. [MDL Record No. 2170, p. 7]  The *Williams* court considered whether a driver who signals the operation of another motor vehicle to proceed has undertaken a duty of care to other motorists on the roadway.  In resolving this issue, the court held that, absent special circumstances, no such duty exists.  669 A.2d at 811.  The cases before this Court do not present special circumstances which would be grounds for altering general principles of products liability and negligence law. Instead, as this Court has held on prior occasions, a threshold requirement is that the plaintiff initially assert — and eventually prove — that the defendant's product caused the plaintiff's injury.

The Court has determined on several prior occasions that the defendants' motions to dismiss should not be held in abeyance to allow plaintiffs to seek certification from various jurisdictions regarding the issues raised in this proceeding.  Likewise, the Court will not delay its rulings on these motions to allow the plaintiffs in several cases to conduct discovery

-14-

concerning their own claims.[9]  And the Court has previously addressed — and rejected — the plaintiffs' substantive arguments that they should be allowed to proceed against Lilly even though their factual allegations are insufficient to establish liability under existing principles of federal and state law.  This includes the argument advanced by the plaintiff in *Wilson v. Eli Lilly and Company, et al.*, Civil Action No. 2: 12-047-DCR, that Lilly should be liable to the same extent that she alleges the generic defendants are liable for continuing to sell products containing propoxyphene.  [*See* MDL Record No. 1305.]

## III.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1.      The plaintiffs' motion to file an amended complaint in Civil Action No. 2: 11-347-DCR [MDL Record No. 2171] is **GRANTED**.

2.      The plaintiffs' motion to file an amended complaint in Civil Action No. 2: 12-046-DCR [MDL Record No. 2143] is **GRANTED**.

3.      Defendant Eli Lilly and Company's Third Master Motion for Judgment on the Pleadings [MDL Record No. 2047] is **DENIED** as moot in  Civil Action No. 2: 11-347-DCR and Civil Action No. 2: 12-046-DCR, based on leave granted to file an amended complaint in

---

9      In six cases (Civil Action Nos. 2: 11-358, 2: 11-396, 2: 12-013, 2: 12-041, 2: 12-043, and 2: 12-049), the plaintiffs argue that they are continuing to gather additional records and information to identify the parties "potentially liable for [their] ingestion of propoxyphene pain products."  [MDL Record No. 2145, p. 6]  This argument was previously rejected by the Court in connection with similar motions to dismiss and for judgment on the pleadings.  Each plaintiff whose complaint is the subject of Lilly's current motion has been given ample time to obtain necessary documentation to support his or her claims and file an amended complaint, if such is justified.

those matters.  The Clerk of the Court is **DIRECTED** to file the Amended Complaints previously tendered in those actions.

      4.    Defendant Eli Lilly and Company's Third Master Motion for Judgment on the Pleadings [MDL Record No. 2047] is **GRANTED** with respect to the claims asserted by the following plaintiffs in the following cases:

    a.    Civil Action No. 2: 11-183-DCR, Plaintiffs Norma Sue Gibson Lanning and Jimmy D. Blanton;

    b.    Civil Action No. 2: 11-324-DCR, Plaintiffs Feride Buch; Lou Davis, individually as wrongful death beneficiary and on behalf of the Estate of Bertha Lee Patrick; Eddie McCoy; James E. Morel; and Johnnie Nelson;

    c.    Civil Action No. 2: 11-357-DCR, Plaintiff Betty Shackelford and her husband, Howard Shackelford;

    d.    Civil Action No. 2: 11-358-DCR, Plaintiff Steven Nicholson and his wife, Helen Nicholson;

    e.    Civil Action No. 2: 11-396-DCR, Plaintiff Gladys Hines;

    f.    Civil Action No. 2: 11-397-DCR, Plaintiff Janet Ooten;

    g.    Civil Action No. 2: 12-013-DCR, Plaintiff Donna Adegbayi, on behalf of the Estate of Evelyn Givens;

    h.    Civil Action No. 2: 12-032-DCR, Plaintiff Keith Marsalis;

    i.    Civil Action No. 2: 12-041-DCR, Plaintiff Lois High, individually and on behalf of the Estate of Minnie Fowler;

    j.    Civil Action No. 2: 12-043-DCR, Plaintiff Steven Ayling, Sr., and his wife, Denise Ayling;

    k    Civil Action No. 2: 12-047-DCR, Plaintiff Constance Wilson, individually and as Administratrix of the Estate of Thomas Wilson; and

    l.    Civil Action No. 2: 12-049-DCR, Plaintiff Rose Marie Sinkler.

     5.     The claims asserted by the plaintiffs identified in paragraph 4 above against Defendant Eli Lilly and Company are **DISMISSED**, with prejudice.

This 5th day of September, 2012.

Signed By:

*Danny C. Reeves* DCR

**United States District Judge**